UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WATKINS MOTOR LINES, INC.,

        Plaintiff,

vs.                             Case No.  3:06-cv-580-J-33MCR

CRUM & FORSTER INSURANCE CO., and
UNITED STATES FIRE INSURANCE CO.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss Amended

Complaint (Doc. 14), filed on July 27, 2006.  Also before this Court is Plaintiff's Motion

for Leave to File Second Amended Complaint (Doc. 15), which Plaintiff filed

contemporaneously with its response in opposition to Defendants Motion to Dismiss

(Doc. 16).  The district judge referred the Motion to Dismiss to the undersigned for a

report and recommendation.  Accordingly, both the Motion to Dismiss and the Motion for

Leave to Amend are ripe for review.  The Court has considered the motions, the

responses, the reply and sur-reply at issue in this matter.

---

[1] Any party may file and serve specific, written objections hereto with TEN (10) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  See 28 U.S.C. §636(b)(1); Fed.R.Civ.P. 72(a), 6(a) and (e); Local Rules 6.02(a) and 4.20, United States District Court for the Middle District of Florida.

## I. **BACKGROUND**

Taking the facts set forth in both Plaintiff's Amended Complaint and Second Amended Complaint as true, the following is a brief factual background for this case. On July 6, 2006, Plaintiff filed a four count Amended Complaint against Defendants. (Doc. 6).  Plaintiff is a corporation which provides interstate motor truck transportation services.  According to Plaintiff, Plaintiff purchased an insurance policy (the "Policy") from Defendants Crum & Forster Insurance Co. ("Crum & Forster") and United States Fire Insurance Co. ("USF") (collectively "Defendants").  The Policy provided commercial insurance for certain real and personal property leased or owned by Plaintiff.  On August 29, 2005, Hurricane Katrina struck New Orleans and caused substantial damage to property leased by Plaintiff and personal property owned by Plaintiff in New Orleans.  This property included an office building, a motor carrier terminal facility, several semi-tractors, trailers, and dollies.  Plaintiff claims the aggregate loss covering the damaged property amounted to at least $795,000.

Plaintiff asserts the property is covered by the Policy.  Plaintiff notified Defendants of the loss and damage (the "Katrina claim") pursuant to the claims handling guidelines in the Policy.  Plaintiff claims it has paid all of its premiums and performed all acts and obligations required to keep the Policy in full force and effect.  Defendants have refused to provide Plaintiff coverage under the Policy.  In Count I, Plaintiff asserts a claim for breach of contract based on Defendants' failure to provide coverage in accordance with the Policy, as well as their failure to pay the insurance proceeds attributable to Plaintiff's Extra Expense damages.

The Policy includes different deductible amounts depending on the cause of loss or damage.  It sets 2% of the insured value of the damaged property or a minimum of $50,000 for the Windstorm or Hail Percentage Deductible.  Alternatively, it sets a deductible of $500,000 for the Flood Deductible.  Plaintiff believes the $50,000 deductible applies in its Hurricane Katrina claim; where as Defendants believe the $500,000 flood deductible applies to Plaintiff's Katrina claim.  In Count II, Plaintiff asserts a breach of contract claim due to Defendants' failure to apply the $50,000 deductible to Plaintiff's Katrina Claim.

In Count III, Plaintiff seeks declaratory relief from the Court.  In Count IV, Plaintiff asserts a claim for bad faith and alleges Defendants breached their duty of good faith and fair dealing by intentionally failing and refusing to fulfill their obligations under the Policy.  In addition to declaratory relief, Plaintiff seeks damages for breach of contract and bad faith, as well as attorney's fees.

As stated above, Defendants have filed a Motion to Dismiss pursuant to Rule 12 (b) 6 of the Federal Rules of Civil Procedure.  Plaintiff, on the other hand, has filed a response in opposition and a Motion for Leave to Amend, along with a Second Amended Complaint, in an effort to resolve the issues asserted in Defendants' Motion to Dismiss.  Defendants, however, oppose Plaintiff's Motion to Amend on the basis that two of its arguments set forth in its Motion to Dismiss still remain, despite Plaintiff's attempt to amend the complaint a second time.[2]  Specifically, Defendants argue

---

[2] In the Motion to Dismiss, Defendants asserted three reasons for seeking dismissal of the Amended Complaint.  Two of Defendants' arguments are addressed by the Court in this Order.  The Court will not address the third argument, i.e., Plaintiff improperly incorporated all averments from prior counts into Counts

(continued...)

Plaintiff, in its Second Amended Complaint, has not addressed Defendants arguments that Plaintiff's Amended Complaint should be dismissed because (a) Defendant Crum & Forster is not a party to the insurance contract and thus, the breach of contract actions against Crum & Forster are improper and (b) Plaintiff's Count IV should be dismissed for failure to state a sufficient cause of action for bad faith.  As such, Defendants oppose Plaintiff's Motion for Leave to Amend because if allowed, such amendment would be futile and also subject to dismissal.

## II.  STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend a pleading "shall be freely given when justice so requires."  Fed. R. Civ. P. 15.  As the Supreme Court further explained in  Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962):

> In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc.– the leave sought should, as the rules require, be "freely given."

(emphasis added); see also, Technical Res. Servs., Inc. v. Dornier Med. Sys., Inc., 134 F.3d 1458, 1463 (11th Cir. 1998).  An amendment is futile if the complaint as amended would not survive a motion to dismiss.  See Florida Power & Light Co. v. Allis Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir. 1996) (affirming district court's denial of a motion

---

[2](...continued)
II, III, and IV, because Plaintiff's Second Amended Complaint contains only the general allegations in each of its counts and Defendants no longer assert this as a basis for dismissal.

for leave to amend based on futility because it would not withstand a motion to dismiss).

Defendants moved to dismiss Plaintiff's Amended Complaint; the Court, however, will analyze Defendants' motion as applied to Plaintiff's proposed Second Amended Complaint since the Second Amended Complaint eliminates one of the issues argued by Defendants in their motion and the two remaining issues continue to apply to Plaintiff's proposed Second Amended Complaint.  Accordingly, the issue before this Court is whether Plaintiff's proposed Second Amended Complaint survives Defendants' Motion to Dismiss.

A Rule 12(b)(6) request for dismissal for failure to state a claim upon which relief may be granted is appropriate only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In making this determination the Court is restricted to consideration of the facts alleged in the complaint itself, along with documents central to or referenced in the complaint.  La Grasta v. First Union Securities, Inc., 358 F.3d 840, 845 (11th Cir. 2004).  Further, the facts set forth in the complaint must be viewed in the light most favorable to the plaintiff.  Quality Foods De Centro America v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983).

### III.  ANALYSIS

### A.  Breach of Contract Claims

Defendants first seek dismissal of Counts I and II, for breach of contract, because Defendants argue Crum & Forster is not a party to any contract for insurance

with Plaintiff.  (Doc. 14, pp. 3, 5-6; Doc. 21, p. 2).  Defendants assert USF is the only

entity that contracted with Plaintiff to provide insurance benefits.  Id.  Evidently, Crum &

Forster is the parent corporation of USF, as evidenced by Defendants' argument that

Crum & Forester cannot be held liable for a contract entered into by its subsidiary.

(Doc. 14, pp. 5-6).  Defendants argue that there are only limited situations in which a

parent corporation is liable for a contract for which its subsidiary corporation entered,

i.e., when a party seeks to pierce the corporate veil.  Id.  Defendants assert Plaintiff has

not and cannot allege any facts which would allow Plaintiff to pierce the corporate veil

and thus, Counts I and II should be dismissed because the breach of contract claims

against Defendant Crum & Forster are improper.  Id.

Plaintiff alleges, on the other hand, both defendant corporations issued the Policy

to Plaintiff.  (Doc. 15, Ex. 1, p. 2).  More specifically, Plaintiff argues Defendant Crum &

Forster is a party to the insurance contract as evidenced by the fact that Crum &

Forster's name appears on 37 pages of the 137 page Policy.  (Doc. 16, p. 4).

Moreover, Crum & Forster's name appears by itself on several pages of the Policy.  In

fact, Plaintiff points to a page in the Policy titled "To Our Florida Policyholders" which

mentions that "the state of Florida requires insurance companies to provide guidelines

for Risk Management plans" and which then identifies Crum & Forester as the

insurance company which can assist Plaintiff in its risk management plan.  Id.  Plaintiff

additionally argues Defendant USF's name only appears on 13 pages of the Policy and

only once by itself.  Id.  Consequently, Plaintiff asserts both Defendants are parties to

the contract, or alternatively, the contract is ambiguous at best because the fact that

Crum & Forster's name appears throughout the contract creates ambiguity as to the identity of the actual insurer.  Id. at 4-5.

Defendants reply that although Crum & Forster's name does appear on the Policy, such fact does not illustrate it contracted with Plaintiff.   Defendants cite Travelers Indemnity Co. v. Household International, Inc., as support for the fact that the language in the Policy demonstrates Crum &Forster did not issue the policy.  775 F. Supp. 518 (D. Conn. 1991).  Defendants point to court's statement  in Travelers that although the language in the insurance policy at issue was confusing, the fact that the signature page and the page setting forth the policy's provisions and exclusions both contained the subsidiary's name, in addition to the language on the signature page, lead the court to believe the plaintiff was not the party in interest for purposes of bringing the action.  Id. at 525.

The instant case is distinguishable from Travelers in that the issue in Travelers was not whether both the parent and the subsidiary corporation were parties to the contract and therefore, properly named as defendants.  Rather, the issue was whether the court had subject matter jurisdiction over the matter and more specifically, whether the parent company of an Illinois insurer, who issued an insurance policy, was the real party in interest for the purpose of bringing an action to recover deductibles paid by it in settlement.  Id. at 520, 522-23.  The Court held that it lacked subject matter jurisdiction based on diversity because the subsidiary of the plaintiff was a necessary party and the real party in interest pursuant to Fed. R. Civ. P. 17(a) and 19(b).  Id. at 525-30.

Notably, the relevant procedural rules and the posture of the <u>Travelers</u> case are wholly distinct from the rules at issue and posture of the instant case.  As explained by the district court in <u>Travelers</u>:

> In contrast with a motion to dismiss based on Rule 12(b)(6), dismissals for lack of subject matter jurisdiction are not on the merits and therefore not accorded a res judicata effect that would prevent the reinstitution of the action in a court that has subject matter jurisdiction over the controversy.

<u>Id</u>. at 522-23.  (internal citations omitted).  In fact, the <u>Travelers</u> court noted that "inferences favorable to the pleader will not be drawn" and "the movant and pleader may use affidavits and other extra-pleading materials to support and oppose the challenge to subject matter jurisdiction."  <u>Id</u>. at 523, n. 5.

In stark contrast to the lack of inferences and use of evidence in the <u>Travelers</u> case, the Court in this case is required to view the facts in a light most favorable to Plaintiff.  <u>Quality Foods De Centro America</u>, 711 F.2d at  994-95.  Moreover, this Court is not authorized to look at affidavits or other extra-pleading materials in support of Defendants' Motion to Dismiss, and should not dismiss the complaint "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

When the facts are viewed in a light most favorable to Plaintiff, the Court finds the identity of the insurer(s) is ambiguous.  Plaintiff is correct that Crum & Forster's name appears on numerous pages throughout the Policy.  Additionally, the Policy fails to clearly define the insurer.  Importantly, there is no definition of insurer in the Definition section of the Policy.  Rather, the only sections in the Policy which make any mention as to the identity of the insurer are ambiguous.  In fact, the Policy merely states

"[t]hroughout this policy . . . [t]he words 'we,' 'us' and 'our' refer to the Company providing insurance."  (Doc. 6, Ex. 3, p. 11; Ex. 4, p. 2).  Notably, the word Company is never defined in the Policy.

It is worth noting that the court in <u>Travelers</u> was not convinced one way or another whether the plaintiff was a party  to the contract.  <u>Id</u>. at 525 (stating "the Court is not convinced that [plaintiff] was a party to the contract with [defendant]."  While the Court did note that "based solely on the language of the Policy,  [plaintiff] is not the party in interest for purposes of bringing this action," it relied on the fact that the page setting forth the insurance policy's provisions and exclusions was styled with the name of the company which was the subsidiary of the plaintiff.  <u>Id</u>.  Moreover, the signature page of the Policy stated that the subsidiary corporation "has caused this policy to be signed."

In contrast, the Policy at issue in the instant case is not as clear.  Although Defendants argue that USF is named on the signature page and Crum & Forster is not, there is no language on the signature page other than USF's name and the signatures of the President and Secretary.  The Court cannot find that merely because Crum & Forster's name does not appear on the signature page, it is abundantly clear Crum & Forster is not a party to the contract.  Additionally, Defendants argue USF is clearly named under the title of the pages entitled "Common Policy Declaration," "Schedule of Forms and Endorsements," "Schedule of Locations," "Schedule of Taxes, Surcharges or Fees," and "Endorsement", however, Crum & Forster's name is also prominently placed on each of these pages.  Finally, as Plaintiff points out, Crum & Forster's name appears on several pages of the Policy where USF's name does not.

Because Crum & Forster's name appears on numerous pages in the Policy and because nowhere in the Policy is the insurer defined, it is not entirely clear with whom Plaintiff contracted.  Thus, the facts construed in the light most favorable to Plaintiff, combined with the wording in the Policy, demonstrate that the insurer of the Policy is ambiguous.  Plaintiff is correct that under Florida law, when an insurance contract is ambiguous, any ambiguity should be construed in favor of the insured.  Church of the Palms-Presbyterian (U.S.A.), Inc. v. Cincinnati Ins. Co., 404 F. Supp. 2d 1339, 1341-42 (M.D. Fla. 2005) (citing Swire Pacific Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003).  Consequently, as Plaintiff has pled that it contracted with both defendant companies and because the Policy does not show otherwise, Plaintiff's allegations are sufficient to withstand Defendants' Motion to Dismiss with respect to Counts I and II.

**B.  Bad Faith Claim**

Defendants next argue Count IV should be dismissed because Plaintiff failed to plead facts sufficient to state a cause of action for bad faith under either Florida or Louisiana law.  (Doc. 14, pp. 7-8; Doc. 21, p. 2).  Defendants state Plaintiff has failed to assert any elements of a bad faith claim other than "a blanket statement that Defendants have 'breached their duty of good faith and fair dealing by intentionally failing and refusing to fulfill their obligation under the policy.'"  Id. at 8.  Lastly, while Defendants acknowledge Plaintiff's statement that Florida law applies to its claim, Defendants argue that Florida law does not allow a bad faith claim until there has been

a final determination that the insurer is liable under the insurance policy.  (Doc. 24, p. 4).


Plaintiff argues Florida law applies to its bad faith claim.   (Doc. 16, p. 6).  Plaintiff further argues it set forth the specific acts which constituted bad faith on the part of Defendants.  Id.  Such acts include Defendants' intentional failure to provide Extra Expense coverage, their intentional failure to apply the correct deductible, and their intentional and unreasonable failure to perform under the Policy and pay Plaintiff the insurance proceeds.  (Doc. 15, Ex. 1, p. 7).  Finally, Plaintiff does not dispute Defendants' argument that a bad faith claim does not lie until after a final determination has been made on coverage.  Rather, Plaintiff argues that under Florida law, when a bad faith claim and a breach of contract claim are filed in the same lawsuit, it is appropriate to abate the bad faith claim until a later time, as opposed to dismissing it.  (Doc. 25, p. 5).  Further, Plaintiff notes that the parties agreed to such a procedural strategy in their Case Management Report filed with this Court on September 19, 2006 (Doc. 22).

Because jurisdiction in this case is based on diversity of citizenship and Florida is the forum state, Plaintiff is correct that Florida choice of law rules govern this action. McMahan v. Toto, 256 F.3d 1120, 1131 (11th Cir. 2001).  Florida choice of law rules dictate that when deciding which state law applies to an action sounding in contract, the applicable rule is *lex loci contractus.*  See Pastor v. Union Central Life Ins. Co., 184 F. Supp. 2d 1301, 1305 (S.D. Fla. 2002).  This means that in the absence of a contractual choice of law provision, the contract is governed by the law of the state where the last

act necessary to complete the contract was done.  Id.  Because Plaintiff's Count IV

attempts to state a claim arising in contract, and because the Policy contains no choice

of law provision and was delivered to Plaintiff in Florida, Florida law applies.

Defendants argue that if Florida law applies, Plaintiff's Count IV must be

dismissed because Florida does not recognize any common law "bad faith" cause of

action against a first party insurer.  (Doc. 14, p. 7).  It is well established, under Florida

statutory law, that a first-party claim for bad faith against an insurer does not accrue

until the insured has proven liability in its underlying contractual claim.[3]  Talat

Enterprises, Inc. v. Aetna Life & Cas., 952 F. Supp. 773, 776 (M.D. Fla 1996);  aff'd, 217

F.3d 1318 (11th Cir. 2000) ("A first-party bad faith claimant cannot state a cause of

action until he can allege that there has been a determination of the insured's

damage."); Lane v. Provident Life and Accident Ins. Co., 71 F. Supp 2d 1255, 1256 (S.

D. Fla. 1999) (noting that under Florida Statutes § 624.155 (1)(b), a claim for bad faith

does not accrue until after an insured has proven liability in her underlying contractual

claim); see also FLA. STAT. § 624.155 (2005) (authorizing insureds to assert claims

against an insurer for various acts, including bad faith).  Thus, any attempt to state a

claim for bad faith is premature, however, courts have allowed for abatement of bad

faith actions where the coverage and bad faith claims are initiated simultaneously.[4]

Lynn v. Security Ins. Co. of Hartford, No. 3:06cv217/RV/EMT, 2006 WL 1889985, *1

---

[3] There  is no common law action for bad faith in Florida.  See Talat Enterprises, Inc. v. Aetna Life & Cas., 952 F. Supp. 773, 754 (M.D. Fla. 1996); aff'd, 217 F.3d 1318 (11th Cir. 2000).

[4] "Rooted in notions of judicial economy, the doctrine of abatement offers courts an opportunity to maintain a narrow focus on matters currently at issue, while preserving premature issues for future review if and when such issues ripen."  O'Rourke, 48 F. Supp. 2d at 1385.

(N.D. Fla. July 10, 2006); <u>Taylor v. Great American Ins. Co.</u>, No. 3:05cv793-J-20MCR, 2005 WL 3233104, *1 (M.D. Fla. Nov. 30, 2005); <u>O'Rourke v. Provident Life and Accident Ins. Co.</u>, 48 F. Supp. 2d 1383, 1384-85 (S.D. Fla. 1999).  Here, a review of the docket demonstrates the parties in their Case Management Report (Doc. 22) agreed to resolve the coverage issues prior to resolving the bad faith count.  Specifically, they agreed "that the bad faith count shall be held in abeyance pending the resolution of the Coverage Counts."  (Doc. 22, p. 2).  Accordingly, the Court finds that abatement of the bad faith claim is proper pending the resolution of the coverage claims, as opposed to dismissal.[5]

## IV.  CONCLUSION

Because the Court finds Plaintiff's Second Amended Complaint can survive Defendants' Motion to Dismiss, the Second Amended Complaint is not futile.  Therefore, Plaintiff should be granted leave to file its Second Amended Complaint, however, Plaintiff's claim for bad faith should be abated until a final determination on the coverage issues.

Accordingly, after due consideration, it is

**RECOMMENDED**:

1.    Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 15) be **GRANTED in Part.**

---

[5] It is worth noting that the Supreme Court of Florida has cautioned litigants who choose to file both coverage and bad faith actions simultaneously that "certain documentation relevant to the bad faith action may not be available for discovery until after resolution of the underlying matter."  <u>Allstate Indemnity Co. v. Ruiz</u>, 899 So. 2d 1121, 1130 (Fla. 2005).

2.      Plaintiff be required to file its Second Amended Complaint, with attachments, no later than five (5) days from this Order.

3.      Count IV of the Second Amended Complaint be **ABATED** pending adjudication of Counts I, II, and III.  In the meantime, discovery, pleadings, and/or other matters regarding Count IV of Plaintiff's Second Amended Complaint should not be permitted**.**

4.      Defendants' Motion to Dismiss Amended Complaint (Doc. 14) be **DENIED as moot.**

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this  12th  day of October, 2006.


*Monte C. Richardson*
                                MONTE C. RICHARDSON
                                UNITED STATES MAGISTRATE JUDGE

Copies to:

Virginia M. Hernandez Covington
    United States District Judge

Counsel of Record

-14-